STATE OF NORTH CAROLINA v. JAMES ELIJAH ARTIS

No. 292A85

(Filed 6 May 1986)

1. **Criminal Law § 15— hearing on change of venue—time certain not set—no error**

    The trial court did not err in a prosecution for rape and assault by failing to set a time certain for the presentation of evidence on defendant's motion for a change of venue or a special venire where the motion was heard in chambers when the case was called for trial. The court acted within the time frame set out in N.C.G.S. 15A-952 (1983), the court stated that it would consider the substance of the motion if problems appeared during jury selection, and defendant showed no prejudice relating to the panel chosen.

2. **Jury § 6— individual voir dire denied—no abuse of discretion**

    There was no showing that the trial judge abused his discretion in an assault and rape prosecution by denying defendant's motion for an individual *voir dire* where the jury selection was not recorded, the trial judge was especially aware of the necessity for impaneling jurors who had not been exposed to pretrial publicity, and defense counsel indicated satisfaction with the jury as constituted.

3. **Constitutional Law § 31— appointment of juristic psychologist denied—no abuse of discretion**

    The trial court did not abuse its discretion in a prosecution for assault and rape by denying defendant's motion for the appointment of a juristic psychologist where defendant failed to show a particularized need for the requested expert.

4. **Rape § 5; Assault and Battery § 14.5— rape and assault—evidence sufficient**

    Although defendant failed to meet the requirements of App. Rule 28(b)(5) and raised no issues regarding the denial of his motion for a directed verdict of not guilty of first and second degree rape, assault with intent to kill and assault inflicting serious injury, the Supreme Court reviewed the transcript in the interest of justice and found that the evidence fully supported the jury's verdict.

5. **Criminal Law § 138— pregnancy of victim as aggravating factor—no error**

    The trial court did not err in a prosecution for assault and rape by finding as a non-statutory aggravating factor that the victim was eight months pregnant at the time of the assault. The victim's testimony indicated that her pregnancy did have an effect on her mental and physical reactions at the time of the crime and that it did increase her vulnerability.

THE defendant, originally charged upon proper indictments with first degree rape, assault with a deadly weapon inflicting serious bodily injury, and assault with a deadly weapon with intent

to kill inflicting serious bodily injury, was convicted of first degree rape, assault with a deadly weapon inflicting serious injury (victim A), and assault with a deadly weapon (victim B) at the 14 January 1985 Criminal Session of WILSON County Superior Court, *Winberry, J.*, presiding. Following a sentencing hearing, the defendant was sentenced to life imprisonment on the rape conviction, ten years for the felonious assault to run concurrently with the life sentence, and two years for the misdemeanor assault to run consecutively to the ten-year sentence. The defendant appealed the life sentence to this Court as a matter of right pursuant to N.C.G.S. § 7A-27(a), and we granted the defendant's motion to bypass the Court of Appeals on the assault cases on 30 May 1985. Heard in the Supreme Court 10 February 1986.

*Lacy H. Thornburg, Attorney General, by T. Buie Costen, Special Deputy Attorney General, for the State.*

*C. David Williams, Jr. for the defendant-appellant.*

BILLINGS, Justice.

The State's evidence tended to show that on 10 May 1984 the seventeen-year-old defendant forced his way into the home of victim A, a young, married woman who was almost eight months pregnant and lived near Stantonsburg, North Carolina. She recognized the defendant as the son of a woman who worked on her father-in-law's farm and lived within sight of her home. The defendant attacked victim A with a butcher knife and began trying to pull her pants off. During the struggle, victim A's hands were cut several times by the defendant's knife. Her sister, who was visiting at the time, first sought to aid the victim and then went next door to get help from victim A's mother-in-law, victim B. The mother-in-law came to the house, and the defendant stabbed her in the chest, causing a wound about one inch deep. When the sister and mother-in-law left to get help, the defendant forced victim A into the bathroom and raped her. She tried to fight off the defendant with her sewing scissors. A deputy sheriff, flagged down by the sister, got victim A out of the house, but the defendant ran upstairs. Following a five-hour siege involving a number of patrol cars and sheriff's deputies, the defendant was removed from the house.

On 5 November 1984 the defendant filed a motion for change of venue or in the alternative a special venire pursuant to N.C. G.S. § 15A-957 on the ground of extensive television and newspaper coverage at the time of the incident. In the motion the defendant asked that the trial court set the matter for hearing at a date and time certain so the defense could present subpoenaed testimony. When the case was called for trial as scheduled on 16 January 1985, Judge Winberry heard the pre-trial motions in his chambers. He said he was ready at that time to hear evidence on the defendant's motion. The defense counsel said he had not seen all the material but wanted a time set so that he could subpoena it since it would consist not only of newspaper articles but also of videotapes from various television news stations in the area. Judge Winberry pointed out that the case was on the calendar, counsel had had the opportunity to subpoena witnesses, and he was ready to hear the evidence. When no evidence was offered, he denied the motion but said that he would reconsider his ruling if it appeared during jury selection that the defendant could not get a fair and impartial jury in Wilson County.

[1] The defendant assigns as error the failure of the trial judge to set a time certain for the presentation of evidence on his motion.

N.C.G.S. § 15A-952 (1983) provides:

(f) When a motion is made before trial, the court in its discretion may hear the motion before trial, on the date set for arraignment, on the date set for trial before a jury is impaneled, or during trial.

The trial judge acted within the time frame set out in the statute. Given that the motion had not been heard before trial, "the date set for trial before a jury" was in itself a specific time when defense counsel should have been prepared to present evidence on the motion. Considering that the trial judge said he would reconsider the substance of the motion if problems appeared during jury selection and the fact that the defendant has shown no prejudice relating to the panel chosen, we disagree with the defendant's contention that the failure to set a time certain amounted to a refusal by the trial judge to give defendant a meaningful opportunity to be heard and a refusal by the judge to exercise his discretion. The defendant relies on *State v. McDou-*

*gald,* 38 N.C. App. 244, 248 S.E. 2d 72 (1978), *cert. denied and appeal dismissed,* 296 N.C. 413, 251 S.E. 2d 472 (1979) and *State v. Partin,* 48 N.C. App. 274, 269 S.E. 2d 250, *cert. denied and appeal dismissed,* 301 N.C. 404, 273 S.E. 2d 449 (1980). Neither case supports the defendant's contention, however. In *Partin,* the Court of Appeals held that, in the absence of a showing of prejudice by the defendant, it was not error for the trial judge to fail to rule on a motion for change of venue. In *McDougald* the court held that the failure of the trial court to take judicial notice of news broadcasts "did not deny the defendant the opportunity to prove the occurrence of such broadcasts or their contents. Such facts could have been easily proven by witnesses ordinarily available." 38 N.C. App. at 248, 248 S.E. 2d at 77. This assignment of error is overruled.

[2]   Also on 5 November 1984 the defendant filed a motion for individual *voir dire* and sequestration of jurors during *voir dire* on the grounds that: 1) defendant is a black male; 2) the victim is a married white female who was seven and 1/2 months pregnant at the time of the alleged rape; 3) there was extensive publicity; 4) collective *voir dire* would educate the jurors to prejudicial and incompetent material, precluding a fair and impartial jury; 5) the issues involve asking sensitive and embarrassing questions of the potential jurors; and 6) collective *voir dire* will preclude candor and honesty on the part of the jurors. The defendant assigns as error the trial judge's denial of this motion.

It is well settled that a motion for individual *voir dire* and sequestration is addressed to the sound discretion of the trial judge and will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied,* 448 U.S. 907, 65 L.Ed. 2d 1137 (1980); *State v. Thomas,* 294 N.C. 105, 240 S.E. 2d 426 (1978). In *State v. Boykin,* 291 N.C. 264, 229 S.E. 2d 914 (1976) the defendant asked for a change of venue on the ground that word-of-mouth pre-trial publicity made it unlikely that the defendant could receive a fair trial in the county. She offered the results of an unscientific poll that showed that 73 people responded affirmatively to a questionnaire, saying that they had heard at least one of seven rumors about the defendant. The trial judge had denied the defendant's request to be allowed to ask prospective jurors what they had heard about the defendant. This Court indicated that the solution

to determining whether ˙prospective jurors had heard rumors about the defendant without tainting the entire jury panel would have been to question the jurors separately, but noted that a request for individual *voir dire* had not been made. In *Boykin*, we noted that because the record did not establish what rumors, if any, the jurors had heard about the defendant we had no basis upon which to find prejudice. We said:

> This Court finds itself in a position analogous to that presented when a trial judge sustains an objection to a question and examining counsel fails to have recorded what the answer would have been.

291 N.C. at 273, 229 S.E. 2d at 919-20.

Although individual *voir dire* may be necessary in some cases in order for the defense attorney to examine prospective jurors effectively about their pre-trial knowledge of and opinions about the case, denial of a motion for change of venue on the ground of pre-trial publicity does not always trigger a right to individual *voir dire*. "[T]he suggestion contained in *State v. Boykin, supra,* . . . does not give a defendant a right to separately examine each prospective juror for reasons of pretrial publicity." *Thomas,* 294 N.C. at 115, 240 S.E. 2d at 434.

In the instant case, the jury selection was not recorded, so we have no way of knowing what the jurors were asked. The defendant claims that counsel could not adequately question the jurors about their impartiality on issues of racial prejudice, crimes of sexual violence and pre-trial publicity without educating or offending the remaining panel, but no record has been preserved which we can examine to determine whether the defendant was hampered in his questioning of jurors by the procedure employed. Defense counsel did indicate satisfaction with the jury as constituted. In light of the fact that the trial judge was especially aware of the necessity for impaneling jurors who had not been exposed to pre-trial publicity, and the absence of any indication that an untainted jury was not ultimately seated, we find no showing of an abuse of discretion. *State v. Young,* 287 N.C. 377, 214 S.E. 2d 763 (1975), *death sentence vacated,* 428 U.S. 903, 49 L.Ed. 2d 1208 (1976). This assignment of error is overruled.

[3]   The third motion filed by the defendant on 5 November 1984 requested appointment of a jury selection expert. The trial judge denied the motion, saying that the defendant had not made a showing that would entitle him to the appointment. This decision by the trial judge was in accord with the North Carolina statutes and case law on the appointment of experts.

N.C.G.S. § 7A-450(b) (1981) provides for the appointment of "counsel and the other necessary expenses of representation" when a defendant is determined to be indigent. In *State v. Oliver*, 309 N.C. 326, 336, 307 S.E. 2d 304, 312 (1983), we said that the burden was on the defendants to show that "there was a reasonable likelihood that a social psychologist would materially assist in the preparation of their defenses or that they would not receive a fair trial without a social psychologist's aid." The defendant argues that placing the burden on the defendant to make a showing that the appointment is necessary violates the defendant's constitutional right under *Ake v. Oklahoma*, 470 U.S. - - -, 84 L.Ed. 2d 53 (1985). In *Ake*, the United States Supreme Court held that the state is required to provide a psychiatrist when sanity is a substantial factor in the defense. Even when the defendant's sole defense is insanity, the *Ake* decision provides that an indigent defendant is entitled to a psychiatrist provided at state's expense only upon an initial showing by the defendant "that his sanity at the time of the offense is to be a significant factor at trial." *Id.* at - - -, 84 L.Ed. 2d at 66. A subsequent decision by the United States Supreme Court, *Caldwell v. Mississippi*, 472 U.S. - - -, 86 L.Ed. 2d 231 (1985), further diminishes the defendant's argument based upon the decision in *Ake* and reinforces the correctness of the position of this Court in *Oliver, State v. Adcock*, 310 N.C. 1, 310 S.E. 2d 587 (1984) (upholding the denial of appointment of a sociologist), and *State v. Watson*, 310 N.C. 384, 312 S.E. 2d 448 (1984) (upholding the denial of appointment of a statistician). In *Caldwell* the Mississippi court had granted the defendant's request for a psychiatrist but denied requests for appointment of a criminal investigator, a fingerprint expert, and a ballistics expert because there was no showing of the reasonableness of the requests. In affirming the Mississippi Court, the United States Supreme Court said: "Given that petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in

the trial judge's decision. Cf. *Ake v. Oklahoma* . . ." 472 U.S. at
---, 86 L.Ed. 2d at 236 n. 1.

In the instant case, since the defendant failed to show a par-
ticularized need for the requested expert, we find no abuse of
discretion by the trial judge in denying the appointment of a
juristic psychologist. This assignment of error is overruled.

[4] The defendant assigns as error the failure of the trial judge
to grant his motion at the close of all the evidence for a directed
verdict of not guilty of first and second degree rape, assault with
intent to kill, and assault inflicting serious injury. Defense
counsel's argument on this issue consists of a statement that he
thinks the State's evidence was sufficient to resist such a motion
but he would like for this Court to review the record and tran-
script to determine any errors that might have been overlooked.
Although the defendant's request fails to meet the requirement of
Rule 28(b)(5) of the Rules of Appellate Procedure and thus raises
no issue for our consideration, in the interest of justice we have
reviewed the entire transcript. We note that the trial judge did
not submit to the jury an offense which included as an element an
intent to kill. The evidence fully supported the jury's verdict as
to all offenses of which the defendant was convicted.

[5] The offense of assault with a deadly weapon inflicting serious
injury carried a presumptive prison term of three years and a
maximum of ten years. The trial judge sentenced the defendant
to the maximum of ten years after finding that a single, non-
statutory aggravating factor, that the victim was eight months
pregnant at the time of the assault, outweighed the five miti-
gating factors. One of the mitigating factors was that the de-
fendant had no prior convictions; the other four related to the
defendant's limited intellectual and social capacity and to his
physical condition of having severely burned arms from a child-
hood accident.

The defendant assigns as error the finding of the non-
statutory aggravating factor. Both parties cite *State v. Eason*, 67
N.C. App. 460, 313 S.E. 2d 221, *affirmed per curiam on other
grounds*, 312 N.C. 320, 321 S.E. 2d 881 (1984), as the only other
reported case finding pregnancy of the victim as an aggravating
factor. In *Eason*, the victim was nine months pregnant. The Court
of Appeals found the pregnancy to be a condition analogous to in-

firmity in statutory factor N.C.G.S. § 15A-1340.4(a)(1)(j) (1983), that the "victim was very young, or very old, or mentally or physically infirm." The concern addressed in that factor is the increased vulnerability of the victim. *State v. Ahearn*, 307 N.C. 584, 603, 300 S.E. 2d 689, 701 (1983). With respect to the pregnancy, the opinion in *Eason* said that the advanced stage of pregnancy could be viewed as an infirmity which made the victim vulnerable and relatively defenseless.

> This condition generally would diminish the victim's capacity to resist the offender. It would augment the potential adverse consequences of the offense, in that not only the victim, but her unborn child as well, are vulnerable to the offender's intrusion. The trauma to the victim is enhanced by concern for her unborn child added to normal concern for herself. The impact of the crime on the victim is relevant to the question of sentencing and is properly considered under G.S. 15A-1340.4(a)(1). *State v. Blackwelder*, 309 N.C. 410, 413 n. 1, 306 S.E. 2d 783, 786 n. 1 (1983).

67 N.C. App. at 464, 313 S.E. 2d at 224.

We agree with this analysis by the Court of Appeals. The defendant argues that the facts in this case are distinguishable from those in *Eason* in that, because the victim valiantly fought off her attacker with her sewing scissors, she was not rendered more vulnerable and defenseless by her pregnancy. To the contrary, the evidence shows that her efforts to resist the defendant by stabbing him with the small sewing scissors did not deter him at all. In addition, victim A testified at trial that when the defendant first pushed his way into her house:

> . . . I was trying to fight with him because I thought he was going to stab me. He had the butcher knife pointed right at my chest and stomach area and I was pregnant and I was afraid he was going to hurt my baby.
>
> . . .
>
> I was so far along in my pregnancy I wasn't feeling well.
>
> . . .

> And, so my sister came in and she saw that he had a knife and he was trying to hurt me and she yelled at him to please stop, not to hurt me I was pregnant.

The victim said that after the defendant forced her into the bathroom and pushed her into the bathtub where she hit her head, he had the knife raised and she thought he was going to kill her, "[b]ecause I couldn't move, I couldn't get up because I was so big."

> She stated that during the rape:

> My main concern at that time was keeping him from hurting my baby and I wasn't as concerned about whether or not he was penetrating me completely . . . because I wasn't as concerned about that as I was keeping myself and my baby alive because I still thought he had the knife.

This testimony indicates that the victim's pregnancy did have an effect on her mental and physical reactions at the time of the crime and that it did increase her vulnerability. It was not error for the trial judge to find the victim's advanced stage of pregnancy as a non-statutory aggravating factor and based thereon to sentence the defendant to a term of years greater than the presumptive term provided for the offense.

No error.